UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

MARY ORR,                                    )
                                             )
     *Plaintiff*,                          )
                                             )
v.                                           )
                                             )     No. 2:24-cv-00197-MJD
COMMISSIONER OF SOCIAL SECURITY,             )
                                             )
     *Defendant*.                          )

## MEMORANDUM AND ORDER

Plaintiff Mary Orr ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her disability insurance benefits ("DIB"), supplemental security income ("SSI"), and Disabled Widow's Benefits ("DWB") [Doc. 1]. Plaintiff filed a brief in support of her claims on March 10, 2025 [Doc. 13]. The Commissioner filed his response on March 27, 2025 [Doc. 15]. Plaintiff filed a reply brief on April 7, 2025 [Doc. 16]. Therefore, this matter is ripe for review. For the reasons stated below, (1) Plaintiff's request for relief [Doc. 1] will be **DENIED**, and (2) the Commissioner's request that the administrative law judge's final decision denying benefits be affirmed [Doc. 15] will be **GRANTED**.

## I.    ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 6 ("Tr.")], Plaintiff filed her application for DIB, SSI, and DWB in November of 2021 (Tr. 305–315). Plaintiff's claims were denied initially and on reconsideration at the agency level (Tr. 114–134; 135–66). Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 231–32). Said hearing was conducted by telephone, on July 18, 2023 (Tr. 39–60).

On September 7, 2023, the ALJ found Plaintiff had not been under a disability, as defined in the Social Security Act, at any time between her alleged onset of disability date (June 22, 2019) and the date of the ALJ's decision (September 7, 2023) (Tr. 32). The ALJ found that Plaintiff was not disabled for purposes of her DIB, SSI, and DWB claims (Tr. 32).[1] The Appeals Council denied Plaintiff's request for review on September 17, 2024 (Tr. 1), making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action on October 29, 2024 [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.     Education and Employment Background

Plaintiff was born on March 10, 1969 (Tr. 305), making her 50 years old on the alleged onset of disability date, which is considered an individual "closely approaching advanced age." 20 C.F.R. §§ 404.1563 and 416.963. She completed the eleventh grade and can communicate in English (Tr. 302, 347). She has no past relevant work (Tr. 31).

### B.     Medical Records

In her initial November 2021 Adult Disability Report, Plaintiff alleged disability due to Rheumatoid Arthritis, Diabetes, Insomnia, PTSD, Nerve Disorder, Bipolar Disorder, Schizophrenia Disorder, Feet Pain, and Swelling in Legs (Tr. 346). Plaintiff also answered in the affirmative when asked if she suffered from the following: anxiety, depression, blurry vision,

_____

[1] With regard to Plaintiff's claim for DWB, the ALJ found that the prescribed period for DWB began January 31, 2008, and Plaintiff had to establish that her disability began on or before January 31, 2015 (Tr. 18). The ALJ found that while the prescribed period ended January 31, 2015, Plaintiff did not allege disability until June 22, 2019 (Tr. 315) and was therefore not disabled for purposes of her DWB application (Tr. 20). Plaintiff has not challenged this finding, and it is not, therefore, subject to this appeal. *See Hollen ex. rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 491 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal"); *see also Howington v. Astrue,* 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009)(assignment of error not made by claimant waived).

2

difficulties with social functioning, emotional withdrawal and/or isolation, difficulty concentrating, shortness of breath, and requires a cane for occasional walking (Tr. 351). While there is no need to summarize all the medical records herein, relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing held on July 18, 2023 (the "Hearing"), Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by Attorney Devon Michael Brady, and his associate, Attorney Tim Despotes, represented Plaintiff at the Hearing. The Court has carefully reviewed the transcript of the Hearing (Tr. 39–60).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

3

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of her impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).

## B.    The ALJ's Findings

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 22, 2019, the alleged onset of disability date. (Tr. 20). At step two, the ALJ found Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine; arthritis of the knees; status post left knee ACL repair; diabetes; inflammatory arthritis; low vision; unspecified episodic mood disorder; panic disorder; and posttraumatic stress disorder" (Tr. 21).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also found that Plaintiff's mental impairments,

4

considered singly and in combination via "Paragraph B" criteria, did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15 (Tr. 22), each of which would require one extreme limitation or two marked limitations. *Id.* The ALJ found Plaintiff had a moderate limitation with regard to remembering or applying information; a marked limitation with regard to interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation for adapting or managing herself (Tr. 22–23). The ALJ also considered "Paragraph C" criteria and determined that the evidence failed to establish the presence of a mental disorder that qualified (Tr. 23).

Next, taking all this information into consideration, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following additional limitations:

- No frequent  pushing/pulling with the left lower extremity;
- No climbing ladders, ropes, or scaffolds;
- No more than occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling;
- No jobs that require fine visual acuity for detailed tasks;
- No concentrated exposure to hazards;
- Ability to understand, remember, and carry out simple instructions and to maintain concentration, persistence, and pace on those types of tasks for two-hour periods over the course of an eight-hour work day;
- No performance of work involving interaction with the public;
- Only occasional interaction with supervisors.

(Tr. 24).

At step four, the ALJ found Plaintiff had no past relevant work pursuant to 20 C.F.R. §§ 404.1565, 416.965 (Tr. 30–31). At step five, the ALJ found there were unskilled occupations with jobs existing in significant numbers in the national economy available to a person with Plaintiff's RFC, including housekeeping cleaner, collator operator, and a tier (Tr. 31). These findings led to

5

the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between her alleged onset of disability date and the date of the ALJ's decision.

## IV.    ANALYSIS

Plaintiff argues the ALJ's decision is not supported by substantial evidence. As a result, she contends the decision should be reversed and benefits awarded, or in the alternative, her claim remanded for further administrative proceedings. Plaintiff asserts this relief is justified due to the following alleged errors:

1.    The ALJ failed to adequately evaluate and sufficiently explain his consideration of the opinion of Melody Counts, M.D., who performed the agency's consultative physical examination in violation of 20 C.F.R. 404.1520c, 416.920c, and the omission of pertinent restrictions has resulted in an RFC that is not supported by substantial evidence.

2.    The RFC failed to properly account for mild and marked mental limitations adopted at step two[2] in the sequential evaluation process, and the ALJ offered no explanation for the discrepancy.

[Doc. 13 at Page ID # 1595–1613].

### A.    Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek*

---

[2] As a general matter, Paragraph B limitations are used to rate the severity of mental impairment(s) at steps two and three of the sequential evaluation process. *See* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). The portion of the ALJ's analysis to which Plaintiff objects actually takes place in step three of the ALJ's sequential evaluation process (Tr. 21–23).

6

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

A court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). A court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant. *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (assignments of error not made by claimant waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at

*7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)).

## B. Residual Functional Capacity ("RFC")

A claimant's RFC is the most they can do—not the least—despite their impairments. 20 C.F.R. § 404.1545(a)(1); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155–56 (6th Cir. 2009). The RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). An ALJ is responsible for determining a claimant's RFC after reviewing all the relevant evidence in the record. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). An ALJ develops the RFC based on all relevant evidence, including the claimant's subjective statements about her limitations and medical opinion evidence. *See* 20 C.F.R. §§ 404.1592, 404.1545.

Plaintiff makes two arguments regarding the RFC. First, Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to adequately evaluate and sufficiently explain his consideration of the opinion of Dr. Melody Counts, M.D. ("Dr. Counts") [Doc. 13 at Page ID # 1595]. Second, Plaintiff argues that the ALJ's Paragraph B findings of marked limitation with regard to interacting with others and mild limitation for adapting or managing oneself were not reflected in the RFC [Doc. 13 at Page ID # 1595].

### i. The ALJ's Evaluation of Dr. Counts' Opinion

In this case, the ALJ adopted RFC limitations that were less restrictive than those recommended by Dr. Counts, the physician who performed the Agency's consultative physical examination. In short, Dr. Counts limited Plaintiff to standing and walking approximately two hours at a time or two hours out of an eight-hour work day, (Tr. 1381) and the ALJ did not (Tr.

8

24).[3] Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to adequately evaluate and sufficiently explain his consideration of the opinion of Dr. Counts [Doc. 13 at Page ID # 1595].

Under 20 C.F.R. § 404.1520c, an ALJ is required to consider multiple factors in evaluating medical opinion evidence, including (1) supportability, (2) consistency, (3) a source's relationship with the claimant, (4) specialization, and (5) other supporting or contradicting factors. This rule, which applies only to claims filed on or after March 27, 2017, "notably reduces the articulation standards required for ALJs in assessing medical source opinions" from the standards applicable to earlier-filed claims. *Gourley v. Comm'r of Soc. Sec.*, No. 2:21-CV-99, 2022 WL 4546376, at *5 (E.D. Tenn. Sept. 28, 2022) (cleaned up and citation omitted). "Supportability and consistency will be the most important factors, and usually the only factors the ALJ is required to articulate." *Jones v. Berryhill*, 392 F. Supp. 3d 831, 839 (M.D. Tenn. 2019) (citation omitted). While the ALJ is required to consider the relevant factors, the ALJ is not required to explain their consideration of all such factors in the written decision. 20 C.F.R. § 404.1520c(b)(2).

In this case, Dr. Counts' three-page report questions whether Plaintiff was making her full effort during certain portions of the exam and notes that Plaintiff's physical presentations were not consistent with x-ray findings:

- "[Plaintiff] is cooperative in giving her history, but it is unclear whether she is giving her full effort during some aspects of the physical exam, which I will detail below…" (Tr. 1380).

- "It is difficult to determine whether or not she is giving her full effort on this upper extremity exam. She seems to have normal flexion and extension in her

---

[3] Plaintiff is correct that, given her age and prior educational and work history, had Dr. Counts' limitations applied in full, the grids would have directed a conclusion of disability based on sedentary exertion. [*See* Doc. 13, Page ID # 1607]. The Commissioner did not dispute this in his brief, instead arguing that Dr. Counts' "standing/walking/stooping restrictions were not borne out by the record." [Doc. 15, Page ID # 1626].

9

elbows bilaterally and 4+/5 upper extremity strength again unclear as to whether this is her maximal effort…" (Tr. 1380).

- And, "[u]nclear if the rotational lumbar exam is her maximal effort" (Tr. 1380).

- Dr. Counts pointed out that Plaintiff had a "markedly antalgic gait in the exam room" but noted "that seemed somewhat out of proportion with her radiologic findings (Tr. 1381).

Dr. Counts' examination culminated in the following opinion:

I suspect the patient may not have been giving her maximal effort on some portions of the musculoskeletal exam, and therefore it is difficult to make a full assessment of her capabilities. Based on what she has shown me today on exam it seems quite inconsistent with the relative normality of the x-ray findings. I would anticipate that she could lift 11 to 20 lbs occasionally and carry 11 to 20 lbs occasionally during an eight-hour workday. She could sit approximately one hour at a time and approximately two hours total if she could change positions ad lib. She could stand and walk approximately two hours at a time or two hours out of an eight-hour workday. She does not use a cane to ambulate. Reaching overhead would be never based on her range of motion that she demonstrates here. Foot controls would be occasional with either foot. I would not recommend climbing stairs or ladders due to the pain issues and multiple joints. Stooping, kneeling, or crouching would be difficult for any patient with low back pain and I would not recommend it. Despite her report of visual impairment I see no evidence on our exam of severe visual or hearing impairment or of mental health impairment that would prevent her from working with others. She gives a history of being sensitive to heat and losing consciousness when she gets too hot, however I have no medical records to verify the truth of this. I have no evidence that she would have difficulty with fumes.

Again, the patient's physical findings seem to not correlate very well with her radiologic findings and I would encourage the committee to evaluate any available medical records in detail when considering her ability to work. I would also recommend that they obtain a psychiatric evaluation on her or obtain her records from her current psychiatric team to further evaluate her ability to work.

(Tr. 1381).

With regard to Dr. Counts' opinion, the ALJ found as follows:

The undersigned has considered the opinion of Dr. Melody Counts in Exhibit C5F, but finds her opinion unpersuasive as she noted the claimant gave less than full effort at the physical examination. Furthermore, her opinion is not supported by medically acceptable clinical signs and findings and diagnostic techniques and is not consistent with the other evidence of record. The undersigned notes that the

10

claimant has not sought nor required treatment for any physical complaints at any time during the period at issue, despite having medical insurance.

(Tr. 30). The Court will now turn to address Plaintiff's claims in opposition to the ALJ's findings.

First, Plaintiff argues that it was "dubious" for the ALJ to reject Dr. Counts' recommended restrictions because "an individual with severe mental impairments has not sought treatment" for her physical complaints [Doc. 13 at Page ID # 1601]. However, whether a claimant seeks medical treatment is a proper consideration in weighing a claimant's credibility with regard to alleged disability. *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.") (citations omitted)); *see also* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *9–10 (Oct. 15, 2017) ("individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" is a potentially relevant factor in assessing a claimant's subjective symptom reports).

Plaintiff is correct that, in the context of a claimant with a potential mental impairment, failure to seek medical care "should not be a **determinative** factor in a credibility assessment." *See Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)(emphasis added); *see also Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 493 (6th Cir. 2011) (ALJ erred in discounting the plaintiff's claimed mental impairment **solely** because she failed to seek formal mental health treatment)(emphasis added).[4] However, Plaintiff's failure to seek treatment was not

_____

[4] As noted by the Commissioner, the cases cited by Plaintiff involve claimants with mental health conditions who failed to seek *mental health treatment. See e.g., Boulis-Gasche,* 451 F. App'x at 493*; Blankenship*, 874 F.2d at 1124; *Tina S. v. Kijakazi*, No. 3:21-CV-00266-CRS, 2022 WL 7265964, at *7 (W.D. Ky. July 29, 2022), *report and recommendation adopted*, No. 3:21-CV-266-CRS, 2022 WL 4595066 (W.D. Ky. Sept. 30, 2022). That is not the case here, as Plaintiff sought and received mental health treatment for her mental impairment. (Tr. 603–1369, 1385–1549).

11

Case 2:24-cv-00197-MJD    Document 17    Filed 12/15/25    Page 11 of 22    PageID #: 1650

determinative—the ALJ did not base his finding on this lack of treatment alone, nor was it even a primary consideration. Instead, the ALJ found that Dr. Counts' opinion was unpersuasive given Dr. Counts' findings that (1) Plaintiff was potentially not showing full effort during her physical exam; (2) what Plaintiff was showing during the exam did not align with Plaintiff's diagnostic results; and (3) Plaintiff had not sought treatment for the alleged physical impairments (Tr. 30). Furthermore, there is no evidence in the record that connects Plaintiff's alleged mental impairment with her failure to seek treatment for her physical conditions. To the contrary, the record reveals that Plaintiff sought and received treatment for her mental impairment during this span of time, indicating an ability to seek professional help as needed. Accordingly, this ground has no merit.

Second, Plaintiff argues that Dr. Counts' report is incomplete and the ALJ had a duty to correct it [Doc. 13 at Page ID # 1602]. After ordering a consultative examination, an ALJ is required to review the results and "[i]f the report is **inadequate or incomplete**, . . . contact the medical source who performed the consultative examination, give an explanation of [the ALJ's] evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." 20 C.F.R. § 404.1519p (emphasis added). A report is "complete" if it includes a claimant's chief complaints, history of the complaints, examination findings and any test results, diagnoses and prognoses, a medical opinion, and "some explanation or comment on" the major complaints and any abnormalities. 20 C.F.R. § 404.1519n(c). A report is "adequate" if it provides "evidence which serves as an adequate basis for decision-making in terms of the impairment it assesses." 20 C.F.R. § 404.1519p(a)(1); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016).

Plaintiff argues that the duty to recontact Dr. Counts was clear based on the ALJ's finding that Dr. Counts' opinion was not supported by medically acceptable clinical signs and findings

12

and diagnostic techniques [Doc 13 at Page ID # 1604]. However, it is well-settled in the Sixth Circuit that a report is not "inadequate" if it has merely been found to be vague, unspecific, or unsupported by the evidence, and an ALJ is under no duty to contact the consulting examiner in those situations under 20 C.F.R. § 404.1519p; *see, e.g., Dooley,* 656 F. App'x at 122; *see also Hicks v. Kijakazi*, No. CV-22-122-DLB, 2023 WL 4112093, at *5 (E.D. Ky. June 21, 2023) (finding that the fact that a report may be less persuasive than other medical opinions in the record does not equate to it being incomplete or inadequate). The Court therefore respectfully rejects Plaintiff's argument in this regard.

Third, Plaintiff argues that the ALJ failed to consider "supportability" and "consistency" in evaluating Dr. Counts' medical opinion evidence. Regarding supportability, the standard is clear—the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Furthermore, "courts have held that it is proper for an ALJ to discount a medical opinion that appears to be based on subjective complaints where (as here) the opinion is not supported by objective medical data." *Kelley v. Kijakazi*, No. 1:21-CV-00024, 2022 WL 17736637, at *19 (N.D. Ohio Dec. 16, 2022) (citing *Cruz v. Comm'r of Soc. Sec.*, No. 4:19-cv-2508, 2020 WL 9258402 at * 8 (N.D. Ohio Sept. 15, 2020) ("The Sixth Circuit has repeatedly upheld decisions to discount opinions that appear based on subjective complaints without sufficient support from objective medical data.") (citations omitted).

As a preliminary matter, ALJ decisions are to be read as a whole, including the evaluation of medical opinions. *See Bradford v. Sec'y of Dep't Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986*); Sterner v. Comm'r of Soc. Sec.*, No. 20-12099, 2022 WL 684567, at *3 (E.D.

Mich. Feb. 16, 2022). Dr. Counts drafted a three-page report describing her physical exam of Plaintiff, in which she expressed some concern that Plaintiff might not have been making full effort during her musculoskeletal exam and opined that "the patient's physical findings seem to not correlate very well with her radiologic findings and I would encourage the committee to evaluate any available medical records in detail when considering her ability to work." (Tr. 1382). Based on these very issues, the ALJ found "[Dr. Counts'] opinion unpersuasive as she noted the claimant gave less than full effort at the physical examination. Furthermore, **her opinion is not supported** by medically acceptable clinical signs and findings and diagnostic techniques…" (Tr. 30) (emphasis added). Therefore, the ALJ properly considered whether the opinion was supported by objective medical evidence and found that it was not.

With regard to consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Plaintiff argues that the ALJ did not explain how consistency led him to find the opinion of Dr. Counts to be unpersuasive, citing to *Whitaker v. Astrue*, No. 6:10-126-JMH, 2011 WL 3847502, at *4 (E.D. Ky., Aug. 26, 2011). However, unlike the ALJ in *Whitaker*, the ALJ here does offer explanation for his findings related to consistency, asserting that "[Dr. Counts'] opinion is not supported by medically acceptable signs and findings and diagnostic techniques and **is not consistent** with the other evidence in the record." (Tr. 30) (emphasis added). The ALJ also identified other evidence in the record, noting that other medical opinions of State Agency physicians provide that Plaintiff could perform light work activity, while Dr. Count's restrictions would have amounted to a requirement of sedentary work (Tr. 29).[5]

_____

[5] The ALJ found the opinions of the State Agency physicians to be partially persuasive but further

14

Accordingly, the ALJ properly considered both supportability and consistency in evaluating Dr. Counts' opinion. To the degree Plaintiff argues that the ALJ did not give proper weight to Dr. Counts' opinion, or was somehow "cherry-picking" evidence, an allegation of "cherry-picking" the record "is seldom successful because crediting it would require a court to re-weigh record evidence," which a reviewing court may not do. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014).

ii.     The RFC and Plaintiff's mild and marked mental limitations

In assessing Plaintiff's mental limitations under step three, the ALJ evaluated her alleged mental impairments pursuant to 20 C.F.R. § 404.1520a, rating Plaintiff's degree of functional limitation under Paragraph B criteria in four areas: (1) understand, remember, or apply information (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). Applying the five-point scale in C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff had a moderate limitation with regard to remembering or applying information; a marked limitation with regard to interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a mild limitation for adapting or managing herself (Tr. 22–23). Plaintiff does not dispute these findings, but takes issue with the application of said findings to the limitations in the RFC [Doc. 13 at Page ID # 1608].

Specifically, Plaintiff argues that two of these findings were not reflected in related limitations in the RFC—Plaintiff's marked limitation with regard to interacting with others and

---

limited the Plaintiff to occasional pushing and pulling with the left lower extremity due to her history of left knee ACL repair and x-rays of the left knee showing mild to moderate arthritic changes (Tr. 29).

15

Plaintiff's mild limitation for adapting or managing herself [Doc. 13 at Page ID # 1608].[6] In the RFC portion of the ALJ's decision, the ALJ found Plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following additional limitations related to Plaintiff's mental limitations:

- Ability to understand, remember, and carry out simple instructions and to maintain concentration, persistence, and pace on those types of tasks for two-hour periods over the course of an eight-hour work day;
- No performance of work involving interaction with the public;
- Only occasional interaction with supervisors.

(Tr. 24). The ALJ also made note that, in support of the RFC limitations, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence …" (Tr. 24).

As a preliminary matter, an ALJ is not required to mirror his or her Paragraph B findings, from steps two or three, in the RFC. *See Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *3 (E.D. Tenn. July 10, 2017) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00.A). Rather, "[a] claimant's RFC is formulated at steps 4 and 5, which "requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraphs B and C." *Id.* (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 (July 2, 1996)). In other words, as acknowledged by Plaintiff in her brief, an ALJ is "not required to include a paragraph B finding as part of [his or] her RFC determination." *Gomez v. Comm'r of Soc. Security*, No. 1:22-cv-282-DCP, 2024 WL 925546, *5 (E.D. Tenn. Mar. 4, 2024) (citing *Bookmyer v. Comm'r of Soc. Security*, No. 1:22-cv-1004, 2023 WL 2643496, at *6 (W.D. Mich. Mar. 27,

---

[6] Plaintiff does not raise any issue with the ALJ's application of her moderate limitation with regard to concentrating, persisting, or maintaining a pace, or understanding, remembering, or applying information.

16

2023)). However, an ALJ's failure to explain or consider a claimant's psychological limitations in its RFC assessment may constitute reversible error. *See Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, No. 16-CV-11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017) (case remanded where ALJ made no mention of claimant's mental impairments in the RFC analysis and court was unable to determine if ALJ's decision was supported by substantial evidence).

On this issue, Plaintiff relies heavily upon *Gomez v. Comm'r of Soc. Security*, No. 1:22-cv-282-DCP, 2024 WL 925546, *5 (E.D. Tenn. Mar. 4, 2024), in arguing for remand. However, the *Gomez* court remanded the case because the ALJ found mild limitations under Paragraph B, did not include any mental limitations in the RFC, and did not provide an explanation for failing to do so. *Gomez*, 2024 WL 925546 at *5. Conversely, as set forth in detail below, the ALJ found limitations under Paragraph B, included some mental limitations in the RFC, <u>and</u> explained his reasoning for doing so.

### a. Marked Limitation – Interaction with Others

With regard to the finding of Plaintiff's marked limitation in interacting with others, the RFC includes the following limitations: "no performance of work involving interaction with the public" and "only occasional interaction with supervisors." (Tr. 24). Plaintiff argues that these limitations are inadequate because they do not limit her interactions with coworkers and do not totally prevent her interaction with supervisors [Doc. 13 at Page ID # 1608].

However, "a finding by an ALJ that a claimant has 'marked' limitations in social functioning at Step 3, for example, does not mean that the claimant's RFC will have corresponding or identical limitations." *Shinlever*, 2017 WL 2937607 at *3 (quoting *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (collecting

17

cases)) (remaining citations omitted). And Plaintiff fails to point to any evidence that demonstrates any greater limitations are needed, failing to meet her burden of proof. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating the need for a more restrictive RFC) (internal citation omitted).

The Court's inquiry, then, turns to whether the ALJ *considered* Plaintiff's marked limitations in making the RFC determination that Plaintiff can interact with coworkers and can occasionally interact with supervisors, but must have no interaction with the public. In the opinion, the ALJ makes clear that he "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Tr. 21). Further, the ALJ states that the RFC was determined "after careful consideration of the entire record." (Tr. 24). Specifically, the ALJ found as follows:

> Due to her unspecified episodic mood disorder, posttraumatic stress disorder, and panic disorder, the undersigned finds that the claimant is able to understand, remember, and carry out simple instructions and to maintain concentration, persistence, and pace on those types of tasks for two-hour periods over the course of an eight-hour workday; cannot perform work involving interaction with the public; and can tolerate occasional interaction with supervisors. The undersigned notes that this conclusion is supported by medically acceptable clinical signs and findings and is consistent with the overall evidence of record.

(Tr. 28).

The ALJ goes on to discuss claimant's marked social limitation reasoning that the following activities supported his RFC finding in that regard:

> In describing her activities of daily living, the claimant reported that she lived alone and that she checked her phone, liked drawing and painting, drew, colored, and played a game or on her learning board with her grandbaby, babys[a]t her grandbaby sometimes, had no problems with personal care, prepared her own meals, cleaned the camper daily, swept, mopped, wiped and dusted, did laundry in the bathtub and hung them out, hung pictures, went outside every day when she felt like it, rode in a car, went to the grocery store with her sister and case manager, could go out alone, could drive, but had no transportation, shopped in stores, spent time with others on the phone and texting, and could pay bills count change, handle

18

a savings account, and use a checkbook/money orders. She reported that has had problems getting along with family (Exhibit C6E). The claimant reported that she took care of her granddaughter, spent time with her granddaughter, walked daily for exercise, gardened and worked in the flower bed, worked in the yard, helped a girl clean her yard, and cared for her brother (Exhibits C3F/page 11; C6F/page 11, 20, 30; C8F/pages 95, 101, 128).

(Tr. 28–29).

Accordingly, the ALJ's decision is supported by substantial evidence in the record that Plaintiff was capable of having some positive interactions with others, including her grandchildren, the girl whose yard Plaintiff helped clean, and Plaintiff's brother for whom she care provides care. The ALJ also noted that Plaintiff was described as pleasant and cooperative, getting along well with caregivers and their staff (Tr. 29). Furthermore, these RFC limitations regarding interaction with the public and supervisors are consistent with the findings of the State Agency psychologists, which the ALJ noted and found partially persuasive (Tr. 29). With regard to the claimant's marked limitation for social interaction, the ALJ adopted these State Agency opinions in the RFC entirely, finding that Plaintiff could not perform work that involves interaction with the public but could tolerate occasional interaction with supervisors (Tr. 29). Further, regarding Plaintiff's ability to get along with coworkers, the State Agency opinions found that Plaintiff was "not significantly limited." (Tr. 111, 123, 144, 156). Unlike the ALJ in *Gomez*, the ALJ in this case included mental limitations in the RFC and explained his reasoning for doing so, making clear that he considered State Agency opinions regarding Plaintiff's social limitations along with evidence of Plaintiff's daily living activities to support his RFC findings.

### b. *Mild limitation – Ability to Adapt and Manage Herself*

Plaintiff also makes argument that the ALJ erred by failing to address Plaintiff's mild limitation in the RFC regarding Plaintiff's ability to adapt to change and care for herself [Doc. 13 at Page ID # 1608]. However, courts in this circuit have specifically found that "mild limitations

19

do not require incorporation into an RFC assessment." *See Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6–7 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, No. 16-CV-11818, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017) (collecting cases) (citations omitted). And Plaintiff fails to point to any evidence that demonstrates any greater limitations are needed, failing to meet her burden of proof. *Jordan*, 548 F.3d at 423 (claimant bears the burden of demonstrating the need for a more restrictive RFC) (internal citation omitted).

As before, the Court's inquiry, then, turns to whether the ALJ *considered* Plaintiff's mild limitations in making its RFC assessment. The record is clear that the ALJ did make this consideration:

> [Plaintiff] had no problems with personal care, prepared her own meals, cleaned the camper daily, swept, mopped, wiped and dusted, did laundry in the bathtub and hung them out, hung pictures, went outside every day when she felt like it, rode in a car, went to the grocery store with her sister and case manager, could go out alone, could drive, but had no transportation, shopped in stores, spent time with others on the phone and texting, and could pay bills count change, handle a savings account, and use a checkbook/money orders.

(Tr. 28–29).

The ALJ then addressed the State Agency psychologist's findings that Plaintiff was moderately able to respond appropriately to changes in the work setting. The ALJ disagreed, finding only a mild limitation in adapting to change or managing herself (Tr. 29). The ALJ clearly explained why adaptation limitations were not included, noting that Plaintiff was successfully living alone, caring for her granddaughter at times, and caring for her own personal needs, including appropriate grooming and hygiene (Tr. 29). The ALJ also noted that "the record shows no evidence of problems tolerating or managing difficult situations, being aware of normal hazards, and taking appropriate precautions." (Tr. 29). The ALJ's findings were based on evidence

20

in the record, including records from the Helen Ross McNabb Center showing that claimant's insight and judgment were fair (Tr. 29).

The cases upon which Plaintiff relies on this point are distinguishable from the instant matter because they involve RFCs which included no explanation connecting a claimant's mild to moderate mental limitations with zero mental limitations in the RFC. *See Kohne v. Kijakazi*, No. 2:23-cv-037-DCR, 2023 WL 5220853, at *4 (E.D. Ky. Aug. 14, 2023); *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021); *William G. v. O'Malley*, No. 3:23-cv-00103-LLK, 2024 WL 1141019, at *2 (W.D. Ky. Mar. 15, 2024).

Here, the ALJ found Plaintiff's mental impairments were severe and imposed certain mental limitations in the RFC (as discussed in Part B(i)). Substantial evidence supports the ALJ's determination not to include additional adaptation limitations in the RFC. The ALJ considered Plaintiff's adaptation abilities without imposing specific functional limitations regarding that mild impairment and the ALJ was under no obligation to do so. *See Fannin v. Berryhill*, No. 3:17-cv-236–DCP, 2019 WL 1434653, at *10–12 (E.D. Tenn. Mar. 29, 2019).

### C.     The ALJ's Decision is Supported by Substantial Evidence

The record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all the other evidence in the record to arrive at a well-reasoned RFC. The ALJ also properly relied on the testimony of the VE at steps four and five. In short, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence and is not inconsistent with applicable authority.

21

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton*, 246 F.3d at 775, this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

V.    **CONCLUSION**

Accordingly, it is **ORDERED** that:

> (1) Plaintiff's request for relief [Doc. 1] is **DENIED**; and
>
> (2) the Commissioner's request that the final decision denying benefits be affirmed [Doc. 15] is **GRANTED**; and
>
> (3) this case is **CLOSED**.

SO ORDERED.

ENTER:

/s/ _____
MIKE DUMITRU
UNITED STATES MAGISTRATE JUDGE

22